## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division
### IN ADMIRALTY

_____

WILMINGTON TRUST
COMPANY, not in its
individual capacity, but
solely as Owner Trustee of
the BBC Seattle Trust, a
Delaware Statutory Trust,
for the benefit of JJ Seattle
LLC; WILMINGTON TRUST
COMPANY, not in its
individual capacity, but
solely as Owner Trustee of
the NOCC Arctic Trust, a
Delaware Common Law
Trust, for the benefit of
NOCC Shipowning AS; and
WILMINGTON TRUST
COMPANY,

Plaintiffs,

v.

PRAXIS ENERGY AGENTS
L.L.C.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SECOND CORRECTED
COMPLAINT

Civil Action No. 3:21-cv-000856-
MMH-MCR

_____

Plaintiffs WILMINGTON TRUST COMPANY, not in its individual

capacity, but solely as Owner Trustee of the BBC Seattle Trust, a Delaware

Statutory Trust, for the benefit of JJ Seattle LLC ("SEATTLE Owner Trustee"),

WILMINGTON TRUST COMPANY, not in its individual capacity, but solely

as owner trustee of the NOCC Arctic Trust, a Delaware Common Law Trust, for the benefit of NOCC Shipowning AS ("LIBERTY PASSION Owner Trustee" and, collectively with SEATTLE Owner Trustee, the "Trustee Plaintiffs"), and WILMINGTON TRUST COMPANY ("Wilmington Trust Company" and, collectively with the Trustee Plaintiffs, the "Plaintiffs") and, by their undersigned attorneys, file this Complaint against PRAXIS ENERGY AGENTS L.L.C. ("Praxis"), alleging as follows:

## JURISDICTION AND VENUE

1.      This action, which arises out of maritime liens and the seizure of oceangoing vessels, is within the admiralty and maritime jurisdiction of this Court and is an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h).  This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because this action arises directly out, and seeks the enforcement of, a prior order issued in a related proceeding in this District.

## PARTIES

3.      Plaintiff Wilmington Trust Company, not in its individual capacity, but solely as Owner Trustee of the BBC Seattle Trust, a Delaware Statutory Trust, for the benefit of JJ Seattle LLC is a Delaware corporation with a principal place of business in Wilmington, Delaware.

2

4.     Plaintiff Wilmington Trust Company, not in its individual capacity, but solely as Owner Trustee of the NOCC Arctic Trust, a Delaware Common Law Trust, for the benefit of NOCC Shipowning AS is a Delaware corporation with a principal place of business in Wilmington, Delaware.

5.     Plaintiff Wilmington Trust Company is a Delaware corporation with a principal place of business in Wilmington, Delaware.  For more than 100 years, Wilmington has been in the business of holding assets that are placed in trust, and which Wilmington Trust Company owns only in its capacity as an owner trustee for the benefit of others.

6.     Defendant Praxis is limited liability company with a principal place of business in Houston, Texas, and is engaged in the business of providing maritime necessaries to ships, namely bunkers such as fuel.

## FACTUAL ALLEGATIONS

**A.    Wilmington Trust Company's Role as Owner Trustee**

7.     Wilmington Trust Company has acted as an owner trustee for thousands of vessels and aircraft.  In that role, Wilmington Trust Company serves as the registered owner of assets that are placed in a beneficial trust under Delaware law for the benefit of the trust and a trustor.

8.     Under Delaware statutory law, Wilmington Trust Company and SEATTLE Owner Trustee as "a trustee, when acting in such capacity, shall not be personally liable to any person other than the statutory trust or a beneficial

owner for any act, omission or obligation of the statutory trust or any trustee thereof." 12 Del. C. § 3803(c). Thus, Wilmington Trust Company and SEATTLE Owner Trustee cannot incur any liabilities or debts in connection with the trust or the trust assets unless it knowingly and intentionally binds itself via a contractual obligation to do so.

9.     Moreover, under Delaware statutory law, the "beneficial owner" (or "trustor") of any assets held by Trustee Plaintiffs "shall have an undivided beneficial interest in the property of the statutory trust." 12 Del. C. § 3805(a). As a result, Delaware statutorily provides that "[n]o creditor of the trustee shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the statutory trust with respect to any claim against, or obligation of, such trustee in its individual capacity and not related to the statutory trust."   12 Del. C. § 3805(g).

10.     The same is true with respect to Wilmington Trust Company and LIBERTY PASSION Owner Trustee.  Under Delaware common law, Wilmington Trust Company and LIBERTY PASSION Owner Trustee cannot incur any liabilities or debts in connection with the trust or the trust assets unless they knowingly and intentionally bind themselves via a contractual obligation to do so.

11.     Moreover, the trust estate assets included under a trust agreement are treated separately from assets held by Wilmington Trust Company and

4

LIBERTY PASSION Owner Trustee, and such assets are not considered to be the property of Wilmington Trust Company and LIBERTY PASSION Owner Trustee and are not subject to any debts or obligations arising out of Wilmington Trust Company's or LIBERTY PASSION Owner Trustee's roles as trustee under any other trust agreement for a different beneficiary.

12.    Thus, by operation of Delaware law, (i) Wilmington Trust Company has no equitable ownership to any asset it holds in trust; (ii) each trust is held solely for the benefit of the relevant trustor; (iii) Wilmington Trust Company is not personally liable for debts of the trust incurred in connection with the assets of the trust; (iv) no creditor of Wilmington Trust Company has any right to pursue any assets it holds in trust; (v) no creditor of LIBERTY PASSION Owner Trustee has any right to pursue any assets held by Wilmington Trust Company, as owner trustee, in any other trust; (vi) no creditor of SEATTLE Owner Trustee has any right to pursue any assets held by Wilmington Trust Company, as owner trustee, in any other trust; (vii) Wilmington Trust Company, acting as owner trustee, cannot be personally liable to any person other than the trust or the trustor; and (viii) no trustor has any rights, obligations, entitlements, ownership, or any interest – legal, equitable, beneficial, or otherwise – in any asset that is held by Wilmington Trust Company on behalf of any other trustor.

**B.     The Relevant Trusts**

**1.     M/V Seattle Trust**

13.     Two trusts are relevant to this proceeding.   First, Wilmington Trust Company is the Seattle Owner Trustee.   During the relevant periods, Wilmington Trust Company, as Seattle Owner Trustee, held the M/V Seattle in the BBC Seattle Trust for the benefit of JJ Seattle LLC (the "M/V Seattle Trustor").   The history of the M/V Seattle, which is largely undisputed and briefly summarized below, was extensively detailed in a prior related proceeding in this Court.   *See American Overseas Marine Company, LLC et al. v. M/V Seattle, et al.*, Case No. 3:16-cv-01435-HES-JRK (M.D. Fla., 2016) (the "Florida Proceeding").

14.     In or around April of 2012, the M/V Seattle was leased under a BIMCO Standard Bareboat Charter Agreement to Teras BBC Ocean Navigation Enterprises Houston, LLC ("TBONE," or the "M/V Seattle Charterer").

**2.     M/V Liberty Passion Trust**

15.     Second, Wilmington Trust Company is the Liberty Passion Owner Trustee.   During the relevant periods, Wilmington Trust Company, as Liberty Passion Owner Trustee, held the M/V Liberty Passion in the NOCC Arctic Trust for the benefit of NOCC Shipowning AS in its role as M/V Liberty Passion Trustor.   In or around January of 2017, the M/V Liberty Passion (at

the time named the NOCC Arctic), was leased under a BIMCO Standard Bareboat Charter agreement to Liberty Global Logistics LLC ("Liberty Global" or the "M/V LIBERTY PASSION Charterer").

16.     The M/V LIBERTY PASSION and the M/V SEATTLE are held in in two completely separate trusts for two completely unrelated trustors.

17.     M/V LIBERTY PASSION Trustor is completely independent from, unrelated to, and unaffiliated with M/V SEATTLE Trustor.

18.     The NOCC Arctic Trust is completely unrelated to and unaffiliated with the BBC Seattle Trust, other than the fact that Wilmington Trust Company, not in its individual capacity, is the owner trustee with respect to the separate assets of each separate trust.

**C.     The Florida Proceeding in This Court**

19.     On November 16, 2016, an entity called American Overseas Marine Company, LLC ("AMSEA") filed an *in rem* maritime lawsuit against the M/V SEATTLE, seeking an arrest warrant for the vessel, in the Florida Proceeding. *See American Overseas Marine Company, LLC et al. v. M/V Seattle, et al.*, Case No. 3:16-cv-01435-HES-JRK (M.D. Fla., 2016). According to AMSEA's complaint, TBONE, acting as the M/V SEATTLE Charterer, had defaulted on monthly payment obligations after AMSEA had provided certain technical and crew management services.

7

20.     The M/V SEATTLE was arrested by the U.S. Marshal on December 7, 2016.  The next day, SEATTLE Owner Trustee filed a notice of appearance and verified claim of owner.  On December 22, 2016, SEATTLE Owner Trustee posted an $8.3 million general bond to secure release of the M/V SEATTLE from arrest while litigation proceeded.

21.     In the ensuing months, multiple entities intervened as plaintiffs in the litigation, all seeking to enforce purported maritime liens against the M/V SEATTLE for various necessaries that TBONE had purchased while operating the M/V SEATTLE under the Bareboat Charter Agreement.  One of those intervening plaintiffs was Praxis, the Defendant in this action.

22.     On February 22, 2017, Praxis filed its intervening complaint (the "Praxis Complaint").  The Praxis Complaint and exhibits are attached hereto as **Exhibit A**.  Praxis expressly acknowledged in its complaint that the M/V SEATTLE's "registered owner is Wilmington Trust Company, ***not in its individual capacity*** but as Owner Trustee of the BBC Seattle Trust, ***a Delaware Statutory Trust for the benefit of JJ Seattle LLC***."  Praxis Complaint at ¶ 4 (emphases added).

23.     Praxis alleged that it had provided necessaries to the M/V SEATTLE pursuant to a maritime contract dated July 20, 2016.  Praxis attached a copy of that contract, along with the "terms and conditions" of its sale as **Exhibits 1 and 2** to its complaint.

8

24.    Praxis alleged that the "Master or Chief Engineer" of the M/V SEATTLE signed for the necessaries, and Praxis alleged that the signatory "acted on behalf of the Vessel and her owner and/or operator and/or charterers."  Praxis Complaint at ¶ 9.

25.    SEATTLE Owner Trustee was not aware of, did not sign, and gave no indication of its intent to be bound by any agreement between Praxis and the M/V SEATTLE Charterer with respect to Praxis's provision of necessaries to the vessel.  And nothing in the M/V SEATTLE Bareboat Charter allowed the M/V SEATTLE Charterer to bind SEATTLE Owner Trustee to any obligations.  In fact, the Bareboat Charter specifically prohibited the M/V SEATTLE Charterer from binding SEATTLE Owner Trustee to any such obligations.

26.    According to Praxis, the M/V SEATTLE Charterer defaulted on the payment obligation, leaving $232,200.88 unpaid.  Praxis sought to collect on its purported statutory maritime lien from "the funds in the general bond posted by" SEATTLE Owner Trustee.   Praxis Complaint at Prayer for Relief ¶ C.

27.    Praxis claimed entitlement to a statutory maritime lien against the M/V SEATTLE in connection with its provision of necessaries (*i.e.*, bunker fuel) under 46 U.S.C. §§ 31341 *et seq.*  *See* Praxis Complaint at ¶¶ 17-19.

28.     Pursuant to 46 U.S.C. § 1342(a)(a), such a maritime lien would attach **_exclusively_** to "the vessel" that received the necessaries giving rise to the lien – in this case, the M/V SEATTLE.

29.     On July 24, 2017, SEATTLE Owner Trustee filed a motion for judgment on the pleadings (the "MJP").  A copy of the MJP is attached as **Exhibit B.**  The MJP identified all of the purported lienholders, ranked in order of priority, and conceded the validity of all liens.  Notably, PNC Equipment Finance, LLC ("PNC Equipment Finance") and PNC Bank, National Association ("PNC Bank"), both held preferred ship mortgages that were recorded years ahead of any lien filed by AMSEA, Praxis, or any other intervening plaintiff.

30.     SEATTLE Owner Trustee cited the statutory priority rules codified in 46 U.S.C. §§31301(5)-(6) and 31326(b)(1)(-2) as well as general maritime law, which provide priority ranking to satisfy any valid "liens and claims" following the *in rem* arrest of a vessel.  Once the funds of the posted bond were fully exhausted under the statutory priority, all asserted liens would be extinguished.  *See* MJP at 5-7.  Under governing law, PNC Bank and PNC Equipment Finance's preferred ship mortgages had first priority.  Those liens fully exhausted the bond, leaving AMSEA (which settled out and dismissed its claims), Praxis, and the other intervening plaintiffs unable to recover on their liens.

31.    Praxis did not oppose SEATTLE Owner Trustee's motion for judgment on the pleadings.

32.    Another intervening plaintiff, KIP Bridge Oil ("KIP") did oppose SEATTLE Owner Trustee's motion, but it argued only that it was "premature[] . . . to resolve the priority of the competing liens asserted in this case," and that "there are factual issues to be resolved concerning the competing intervenor liens and priority of same."  KIP Opposition (Dkt. 110) at 3.  KIP did not argue that it had any other avenue of recovery, or that its liens would not be extinguished.

33.    In a November 29, 2017 Order, this Court expressly found that, "[u]nder the terms of the bareboat charter, TBONE had complete operational control of the Vessel, so it was TBONE that ordered, utilized, and benefited from the services provided by the Objecting Claimants," including Praxis.  **Exhibit C** Order at 2.  This Court found any purported claims about factual disputes over the validity of the liens held by PNC Equipment Finance and PNC Bank disingenuous, since fact discovery closed in September of 2017 without a single request for discovery from PNC.  *Id.* at 6.

34.    Importantly, the Court expressly found that the plaintiffs, including Praxis, "delivered goods or services to the Vessel after ***extending credit to TBONE***" at a time when the preferred ship mortgages had already been recorded.  *Id.* (emphasis added).  As a result, "***this Court determines***

11

*[SEATTLE] Owner Trustee is entitled to the relief that it seeks*" and "**ORDERED**" that all claimants, including Praxis "*must look to the Vessel charterer* **in personam**" for any further relief. *Id.* at 8 (emphases added).

35.    After considering Praxis's claim for reimbursement, and having reviewed copies of the contract under which Praxis claimed entitlement to relief, this Court squarely held that Praxis's recourse against the M/V SEATTLE was extinguished, and Praxis's *only* possible recourse was against the "Vessel charterer" in an *in personam* action.

**D.    Praxis's Panama Proceedings**

36.    On or about December 22, 2017 – roughly one month after this Court entered its Order stating in no uncertain terms that Praxis's only avenue for recovery was an *in personam* claim against TBONE – Praxis filed a "Claim and Petition for Seizure" against "Wilmington Trust Company" in the courts of Panama.  *See Praxis Energy Agents LLC v. Wilmington Trust Company*, (the "Panama Proceeding").   The Panama Complaint expressly and repeatedly confirms that Praxis is pursuing relief under the "Code of Maritime Procedure" and "substantive law of the United States of America."  A certified translation of Praxis's complaint in the Panama Proceeding is attached as **Exhibit D** (the "Panama Complaint").

37.    Praxis claimed that "Wilmington Trust Company" in its individual capacity owed Praxis $333,292.89, including interest and legal fees, for the

very same "fuels ('bunkers')" that Praxis had supplied to the M/V SEATTLE (**not the LIBERTY PASSION**) and which had formed the basis for its maritime lien in the Florida Proceeding before this Court.  Notwithstanding this Court's Order in the Florida Proceeding, Praxis asserted three causes of action against "Wilmington Trust Company."

38.     The actions taken by Praxis in Panama were unlawful with respect to Wilmington Trust Company under the laws of the United States, the substantive law alleged in the Panama Complaint.  Praxis had no legal or equitable right to recover from Wilmington Trust Company, individually, for alleged debts created by TBONE, acting as the M/V SEATTLE Charterer, in connection with the M/V SEATTLE.

39.     Similarly, the actions taken by Praxis in Panama were unlawful with respect to LIBERTY PASSION Owner Trustee.  Praxis had no legal or equitable right to recover from LIBERTY PASSION Owner Trustee for alleged debts created by TBONE, acting as the M/V SEATTLE Charterer, in connection with the M/V SEATTLE.

40.     Count one of Praxis's complaint in the Panama Proceeding asserted a breach of contract claim "governed according to the substantive law of the United States of America."  Panama Complaint at ¶ 11.  The claim rests on the very same contract that Praxis submitted to this Court in the Florida Proceeding as an attachment to its intervening complaint.  The Panama

13

Complaint alleges that clauses 2.03 and 2.04 of the "Terms & Conditions" of its contract (which were also submitted to this Court), somehow operated to make the "owners" of the M/V Seattle, which Praxis asserted was "Wilmington Trust Company," individually, responsible for TBONE's purchase of "fuels (bunkers)" for the M/V Seattle even though Wilmington Trust Company (individually, or as owner trustee, or in any capacity whatsoever) was not a signatory to the contract, did not communicate with Praxis at any point prior to the execution of the contract, and made absolutely no representations that would suggest that TBONE could bind Wilmington Trust Company, individually, to any contract.  Panama Complaint at ¶ 12.

41.     Counts two and three of Praxis's complaint asserted two causes of action for "conversion" and "unjust enrichment" under United States law, resting on the same allegations that the "owner" of the M/V Seattle benefitted from the bunkers supplied.

42.     Praxis also included a "PETITION FOR SEIZURE" in its complaint.  Panama Complaint at p. 5.  But the seizure request was not for the M/V Seattle – the only vessel that Praxis supplied with necessaries.

43.     Rather, Praxis sought the seizure of the ***M/V Liberty Passion***, which Praxis ***did not*** provide with necessaries.  Praxis's sole basis for seeking to seize the M/V Liberty Passion was Praxis's assertion that the "M/V Liberty Passion" was "owned" by "Wilmington Trust Company," and that the

14

M/V LIBERTY PASSION was "currently in the waters of the Panamanian Pacific, waiting its turn to begin transit through the Panama Canal." Panama Complaint at p. 5.

44.     The registered owner of the M/V LIBERTY PASSION, however, is LIBERTY PASSION Owner Trustee.  Wilmington Trust Company, individually, is ***not*** the registered owner of the M/V LIBERTY PASSION.  And SEATTLE Owner Trustee is ***not*** the registered owner of the M/V LIBERTY PASSION.

45.     The actions taken by Praxis in Panama were unlawful with respect to M/V LIBERTY PASSION Trustor under the very United States substantive law that Praxis alleged to apply in the Panama Complaint.  Praxis had no legal or equitable right to recover in connection with the M/V LIBERTY PASSION, which is held in trust for the sole and exclusive benefit of M/V LIBERTY PASSION Trustor.

46.      The very same day the court in the Panama Proceeding issued an order of seizure for the M/V LIBERTY PASSION.

47.     The M/V LIBERTY PASSION was seized, and a $496,774.69 bond was posted to secure the release of the vessel.

48.     Wilmington Trust Company, in its individual capacity, endeavored to defend the against the Panama Proceeding on the merit and, given the nature of the claims asserted, LIBERTY PASSION Owner Trustee also sought to intervene in the Panama litigation to preserve all rights.

49. As a result of various procedural activity in the Panama Proceeding, Praxis's claims are still pending, and the security bond that was posted for the M/V LIBERTY PASSION's release is still being held in Panama based on Praxis's claim that it is entitled *under U.S. law* to seek relief directly from "Wilmington Trust Company" for the M/V SEATTLE Charterer's debt notwithstanding this Court's express order that Praxis's sole remaining remedy for that debt was an *in personam* action against the M/V SEATTLE Charterer, itself, and not Wilmington Trust Company, individually.

### FIRST CAUSE OF ACTION
**(Civil Contempt)**
**(Trustee Plaintiffs against Praxis)**

50. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 49 above.

51. Praxis intervened as a plaintiff in the Florida Proceeding, *American Overseas Marine Company, LLC et al. v. M/V Seattle, et al.*, Case No. 3:16-cv-01435-HES-JRK (M.D. Fla., 2016), asserting a right to payment under a lien against the M/V SEATTLE.

52. Praxis asserted a maritime lien against the M/V SEATTLE after purporting to provide bunkers and necessaries to the M/V SEATTLE under a contract "entered into by Teras Cargo Transport (America), LLC, for and on behalf of the Vessel," and attached a copy of a maritime contracted signed only by the Master or Chief Engineer and bearing the Seal of the M/V SEATTLE.

16

53.   Seattle Owner Trustee filed a motion for judgment on the pleadings, requesting that this Court find all asserted maritime liens valid and enforceable, and distribute the bond proceeds pursuant to the statutory priority for maritime liens – thereby exhausting all liens even if there were insufficient funds in the bond to provide the lienholders with full relief.

54.   This Court entered a final, lawful, and enforceable Order granting the motion and the requested relief and finding that the asserted maritime liens – including Praxis's – were valid.  This Court's Order directed the Clerk to distribute the bond proceeds to all lienholders pursuant to the statutory priority for maritime liens.

55.   This Court's Order clearly and expressly provided that upon disbursement of the bond funds, Praxis's lien rights were permanently dissolved notwithstanding the fact that there were insufficient funds in the bond to pay off all outstanding lienholders.  This Court's order also clearly, definitely, and unambiguously provided that Praxis's ***only*** remaining recourse was to "look to the Vessel charterer *in personam*" for repayment under the contract between Praxis and the M/V Seattle Charterer.

56.   Praxis had the ability to comply with this Court's Order, and could have sought repayment exclusively from the M/V Seattle Charterer in an action *in personam*.

57.    Instead, Praxis instituted the Panama Proceedings in connection with the alleged debt arising out of Praxis's dealings with the M/V SEATTLE Charterer, filed claims against Wilmington Trust Company, individually, and seized the M/V LIBERTY PASSION – a vessel held in trust by M/V LIBERTY PASSION Owner Trustee for the benefit of M/V LIBERTY PASSION Trustor.  That action was taken connection with debts incurred by the M/V SEATTLE Charterer while operating the M/V SEATTLE – a vessel held in trust by M/V SEATTLE Owner Trustee for the benefit of M/V SEATTLE Trustor.

58.    The M/V LIBERTY PASSION and the M/V SEATTLE are held in in two completely separate trusts for two completely unrelated trustors.

59.    M/V LIBERTY PASSION Trustor is completely independent from, unrelated to, and unaffiliated with M/V SEATTLE Trustor.

60.    By pursuing the Panama Proceedings, Praxis violated the clear terms of this Court's Order.  In addition, Praxis caused the seizure of the M/V LIBERTY PASSION in an effort to collect a debt related to the M/V SEATTLE, in violation of the clear terms of this Court's Order.

61.    Praxis's misconduct has caused the Trustee Plaintiffs to suffer actual damages, such as costs and expenses associated with securing the release of the M/V LIBERTY PASSION, costs and expenses in defending against baseless and unfounded litigation that is barred by this Court's orders, and

18

damage to their business and reputation in an amount to be determined at trial.

62.    As a direct result of Praxis's violation of the Court's Order, the Trustee Plaintiffs have suffered and will continue to suffer injury to their business and property and will suffer substantial and irreparable harm until the Court enjoins such acts, practices, and conduct.

**SECOND CAUSE OF ACTION**
**(Conversion / Trespass to Chattel)**
**(Wilmington Trust Company and Liberty Passion Owner Trustee against Praxis)**

63.    Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 49 above.

64.    Praxis instituted the Panama Proceedings in connection with the alleged debt arising out of Praxis's dealings with the M/V SEATTLE Charterer, filed claims against Wilmington Trust Company, individually, and seized the M/V LIBERTY PASSION – a vessel held in trust by M/V LIBERTY PASSION Owner Trustee for the benefit of M/V LIBERTY PASSION Trustor.  That action was taken connection with debts incurred by the M/V SEATTLE Charterer while operating the M/V SEATTLE – a vessel held in trust by M/V SEATTLE Owner Trustee for the benefit of M/V SEATTLE Trustor.

65.    Praxis, through and related to the Panama Proceeding, exercised dominion and control over the M/V LIBERTY PASSION, totally dispossessed

LIBERTY PASSION Owner Trustee of the vessel's use as an oceangoing freight carrier for a substantial period of time, seriously interfered with LIBERTY PASSION Owner Trustee's rights as owner trustee of the vessel, and continues to interfere with the rights of LIBERTY PASSION Owner Trustee by continuing with its proceeding which involves the ongoing retention of a significant cash bond to secure the release of the M/V LIBERTY PASSION.

66.    Praxis purported to exercise control over the M/V LIBERTY PASSION in connection with a debt incurred by the M/V SEATTLE Charterer, which Praxis claims "Wilmington Trust Company" is liable for notwithstanding the fact that the M/V SEATTLE Charterer had no authority to bind Wilmington Trust Company to any agreements.

67.    The M/V SEATTLE Charterer incurred debt from Praxis while operating the M/V SEATTLE – a vessel held in trust by M/V SEATTLE Owner Trustee for the benefit of M/V SEATTLE Trustor.   The M/V LIBERTY PASSION was seized in Panama, but that vessel is held in trust by M/V LIBERTY PASSION Owner Trustee for the benefit of M/V LIBERTY PASSION Trustor.

68.    The M/V LIBERTY PASSION and the M/V SEATTLE are held in in two completely separate trusts for two completely unrelated trustors.

69.    M/V LIBERTY PASSION Trustor is completely independent from, unrelated to, and unaffiliated with M/V SEATTLE Trustor.

70.    Praxis had absolutely no legal or equitable right, privilege, or entitlement to exert control or dominion over the M/V LIBERTY PASSION, which LIBERTY PASSION Owner Trustee, not Wilmington Trust Company individually, holds for the benefit of M/V LIBERTY PASSION Trustor.  Praxis had no legal or equitable right, privilege, or entitlement to exert control or dominion over the M/V LIBERTY PASSION based on purported debts owed by the M/V SEATTLE Charterer in connection with the M/V SEATTLE.

71.    Praxis's conduct was unlawful and, given the clear terms of this Court's Order, undertaken in bad faith.

72.    Praxis's misconduct has caused Wilmington Trust Company and LIBERTY PASSION Owner Trustee to suffer actual damages, such as the costs and expenses associated with securing the release of the M/V LIBERTY PASSION and in defending against baseless and unfounded litigation that is barred by this Court's orders, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Tortious Interference)
### (LIBERTY PASSION Owner Trustee against Praxis)

73.    Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 49 above.

74.    Praxis instituted the Panama Proceedings in connection with the alleged debt arising out of Praxis's dealings with the M/V SEATTLE Charterer, filed claims against Wilmington Trust Company, individually, and seized the

M/V LIBERTY PASSION – a vessel held in trust by M/V LIBERTY PASSION Owner Trustee for the benefit of M/V LIBERTY PASSION Trustor.  That action was taken connection with debts incurred by the M/V SEATTLE Charterer while operating the M/V SEATTLE – a vessel held in trust by M/V SEATTLE Owner Trustee for the benefit of M/V SEATTLE Trustor.

75.    During the relevant periods, LIBERTY PASSION Owner Trustee, held the M/V LIBERTY PASSION in trust for M/V LIBERTY PASSION Trustor and the M/V LIBERTY PASSION was leased under a BIMCO Standard Bareboat Charter agreement to M/V LIBERTY PASSION Charterer.

76.    Praxis is not a party to the Bareboat Charter Agreement for the M/V LIBERTY PASSION.

77.    Praxis, through and related to the Panama Proceeding, intentionally and improperly asserted dominion over the M/V LIBERTY PASSION, totally prevented the vessel's use as an oceangoing freight carrier for a substantial period of time, and thereby intentionally interfered with and prevented performance under the Bareboat Charter Agreement, which provided that the M/V LIBERTY PASSION Charterer was entitled to the vessel's use as an unincumbered oceangoing freight carrier.

78.    Praxis had absolutely no legal or equitable right, privilege, or entitlement to exert control or dominion over the M/V LIBERTY PASSION, which

LIBERTY PASSION Owner Trustee holds for the benefit of M/V LIBERTY PASSION Trustor, a trustor that is has absolutely no connection with the M/V SEATTLE.

79.     Praxis's misconduct has caused LIBERTY PASSION Owner Trustee to suffer actual damages, such as its costs and expenses associated with securing the release of the M/V LIBERTY PASSION and in defending against baseless and unfounded litigation that is barred by this Court's orders, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)
### (all Plaintiffs against Praxis)

80.     Plaintiffs reassert and incorporate the allegations in paragraphs 1 through 49 above.

81.     Praxis intervened as a plaintiff in the Florida Proceeding, *American Overseas Marine Company, LLC et al. v. M/V Seattle, et al.*, Case No. 3:16-cv-01435-HES-JRK (M.D. Fla., 2016), asserting a right to payment under a lien against the M/V SEATTLE, and this Court entered a final, lawful, and enforceable Order distributing all proceeds held in bond *in lieu* of the M/V SEATTLE to all lienholders pursuant to the statutory priority for maritime liens, at which point all lien rights – including Praxis's – were dissolved.

82.     This Court's Order clearly and unambiguously provided that Praxis's ***only*** remaining recourse for payment under its contract with the M/V

SEATTLE Charterer was to "look to the Vessel charterer *in personam*" for repayment under the contract between Praxis and the M/V SEATTLE Charterer.

83.    Praxis defied this Court's Order, instituted the Panama Proceedings in connection with the alleged debt arising out of Praxis's dealings with the M/V SEATTLE Charterer, filed claims against Wilmington Trust Company, individually, and seized the M/V LIBERTY PASSION – a vessel held in trust by M/V LIBERTY PASSION Owner Trustee for the benefit of M/V LIBERTY PASSION Trustor.  That action was taken connection with debts incurred by the M/V SEATTLE Charterer while operating the M/V SEATTLE – a vessel held in trust by M/V SEATTLE Owner Trustee for the benefit of M/V SEATTLE Trustor.

84.    The M/V LIBERTY PASSION and the M/V SEATTLE are held in in two completely separate trusts for two completely unrelated trustors.

85.    M/V LIBERTY PASSION Trustor is completely independent from, unrelated to, and unaffiliated with M/V SEATTLE Trustor.

86.    Praxis has continued to pursue the baseless Panama Proceeding, and has caused Plaintiffs to incur fees and expenses securing the release of the M/V LIBERTY PASSION, legal fees and expenses, damaged their business dealings, and threatens great harm to their business and operations as an owner trustee for assets held in Delaware trusts.

87.    A dispute exists between Praxis and the Plaintiffs concerning: (i) whether Praxis is entitled to payment by pursuing any proceeding in violation

of this Court's Order, and (ii) whether Praxis is entitled to payment by pursuing collection of a debt incurred by the M/V SEATTLE Charterer against any of the Plaintiffs or the M/V LIBERTY PASSION.

88.     As a direct result of Praxis's misconduct, Plaintiffs have suffered and will continue to suffer injury to their business and property and will suffer substantial and irreparable harm if Praxis's violations remain unaddressed. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

89.     The Plaintiffs seek a declaratory judgment that Praxis's pursuit of actions against any of the Plaintiffs or the M/V LIBERTY PASSION is unlawful, and enjoining Praxis from continuing or prosecuting the Panama Proceeding or any other proceedings in connection with debt incurred by the M/V SEATTLE Charterer against either (a) the Plaintiffs *in personam*, or (b) any assets that Plaintiffs hold in trust *in rem* including, but not limited to, the M/V LIBERTY PASSION.

## **PRAYER FOR RELIEF**

WHEREFORE, SEATTLE Owner Trustee, LIBERTY PASSION Owner Trustee, and Wilmington Trust Company respectfully request that this Court enter judgment in their favor as follows and award the following relief:

a) Adjudge and declare that Praxis violated this Court's November 29, 2017 Order by instituting legal action against "Wilmington Trust

Company," individually, and asserting dominion over the M/V LIBERTY PASSION, a vessel held by LIBERTY PASSION Owner Trustee;

b) Adjudge and declare that Praxis acted in bad faith and converted and/or trespassed with the M/V LIBERTY PASSION through and related to the Panama Proceeding;

c) Adjudge and declare that Praxis acted in bad faith and tortiously interfered with the M/V LIBERTY PASSION Bareboat Charter Agreement through and related to the Panama Proceeding;

d) Adjudge and declare that Praxis has no right to relief arising out of its provision of necessaries to the M/V SEATTLE against any of the Plaintiffs, or against any assets that Plaintiffs hold in trust *in rem* including, but not limited to, the M/V LIBERTY PASSION;

e) An award of the amount of damages that the Plaintiffs prove at trial and, as appropriate, exemplary damages, punitive damages, and/or attorneys' costs and fees;

f)  An order enjoining Praxis from proceeding with or prosecuting the Panama Proceeding, or any other proceedings against any of the Plaintiffs, or against any assets that Plaintiffs hold in trust *in rem* including, but not limited to, the M/V LIBERTY PASSION, in connection with Praxis's provision of necessaries to the M/V SEATTLE, and imposing a daily fine of $1,000 per day from the entry of an order granting such relief for every day Praxis maintains, pursues, or otherwise prosecutes any such action; and

g) All other relief, in law or in equity, to which Plaintiffs are entitled.

Dated: September 28, 2021

*/s/ Christopher A. Riley*
Christopher A. Riley
Florida Bar Number 0168165
chris.riley@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  404-881-7000

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and further served said document on Praxis Energy Agents LLC at the contact information below.

Michelle Otero Valdés
**CHALOS & Co. P.C.**
2030 Douglas Road, Suite 117
Coral Gables, FL 33134
mov@chaloslaw.com

Dated: September 28, 2021                    */s/ Christopher A. Riley*

Christopher A. Riley

27